Good morning. My name is John Hoopes, and if it pleases the Court, I am here on behalf of the appellants Hervco, Inc. and Daniel Ervin, and I'd like to reserve about five minutes of my time for rebuttal. That's fine. Your Honor, I believe that although there are many ancillary questions in this case, that the core issues and the pivotal issues boil down to essentially two. Did the trial court apply a proper standard of proof for Mr. Ervin's cause of action for violation of the PMPA, the Patrolling Marketing Protection Act? And even if that standard were properly applied, did it correct, was it correct in its ruling that there was no evidence adduced that would satisfy that standard? Let me ask you this. You're appealing from two primary orders of the district court, correct? Two fundamental orders. Well... The judgment following the court's determination under Rule 50 that the defendant was entitled to a judgment as a matter of law, correct? That's correct. And that happened right before the trial was to begin. Not right before, but a couple of days before the trial. That's essentially correct. Right? And you're also appealing the summary judgment. Yes. Those are the two fundamental... Yes. ...issues you're applying. So let me ask you this. Why isn't this case just resolvable on the basis that a Rule 50a ruling before any evidence is presented is just improper under our case law? Well, Your Honor, I think that is essentially accurate. I admit that's not the tact of our appeal and probably should have focused more on that, but I think that is the case. Do you waive that point? No, Your Honor. Well, that's the end of the case, I think, for that part of it. I'm sorry, Your Honor? That's the end of that part of the case. J.M. Oyl cannot be entered... Judge, jump the gun. That's correct. So you don't need to worry about it. That's correct. Move on to something else. Very well, Your Honor. The other part of the case, and I'm not sure I understand what the Court deems to be resolved... Well, let me explain it for you, Mr. Hooper. If under the Ninth Circuit Court case, jurisprudence, a J.M. Oyl cannot be entered until the plaintiff has rested his evidence. You didn't get to put on any evidence, and Judge Silver jumped the gun. Your Honor, that is correct. So you win. On that. It means you go back to where you were before she entered a J.M. Oyl. All right? So that just leaves your summary judgment issue, basically, what you're in. All right. Let me deal with summary judgment. But, again, if... I think, in my view, her ruling on the summary judgment was subsumed in a Rule 50 ruling. But to address directly her summary judgment ruling, her summary judgment ruling had its genesis in... First, it was denied based on a determination that there was an issue of fact as to whether or not there was a bona fide purchase offer, because there was such a disparity in the appraisals. She initially denied summary judgment on that basis. Later, sua sponte, when she issues the decision, she rules that we were obliged to prove that we were ready, willing, and able to close the transaction, and that since there was no proof of that, that summary judgment was appropriate. We then filed a motion for reconsideration saying that that was an improper sua sponte determination, and, number one, that it was an improper determination, and, number two, that that's not the appropriate standard under the PNPA. She granted the motion for reconsideration, directed us to, within 30 days, adduce evidence of being ready, willing, and able, and then revisited the argument. That resulted in a reversal of her initial grant of summary judgment and her express holding that, by virtue of Daniel Irvin's declaration alone, that an issue of fact had been created as to being ready, willing, and able. I think the essential problem with this case arises from the procedural circumstance where Judge Silver later changed again and concluded that, no, she basically made two conclusions, that there was no evidence of ready, willing, and able. She did not address her prior ruling that, by virtue of Mr. Irvin's declaration alone, there was evidence of being ready, willing, and able, and basically reversed that decision without any analysis, and that goes to our law of the case argument. Certainly, she had the power to change her mind, but under this Court's decision in Alexander, it is an abuse of discretion if she does so absent certain requirements, none of which were present here. What requirements are those? Pardon me? What requirements are those? Your Honor, my recollection is that the most important that I recall are there's a change in the law, there are new facts, or there are manifest injustice. I've lost you. My recollection is that under Alexander, in order for a judge to change a ruling, a prior ruling on a pretrial motion, that certain standards have to be considered and applied, otherwise the change is an abuse of discretion. There have to be changed circumstances. There have to be changed circumstances, which would include new facts, a change in the law, and I believe there's also a possibility that if the judge determines that it would be manifest injustice not to change a prior ruling, then that would justify it. Let me ask you this. So on summary judgment, the district court has to either say there are no material factual issues in dispute, and therefore, under the law, that one side or the other is entitled to judgment as a matter of law. Yes. Or she can say there's a factual dispute here, but it's really insignificant because it's just a scintilla of evidence. So my understanding here is that she did two things. She made an interpretation of the act, what is it called? MPM? PMPA. PMPA. Where she basically said your client couldn't remain in the station pending the bona fide offer, resolution of that issue. And therefore, the franchisor was entitled to recover damages for that period of time that you overheld. Isn't that right? That was the district court's determination. We don't agree with that. So what's wrong with it legally? What is wrong with it legally is that their obligation is to present a bona fide offer. And if it is bona fide, it can be accepted. And upon its acceptance and the performance of it, we then can remain in the premises as an owner, not as a tenant. So a precondition to termination of the tenancy is a presentation of a bona fide offer. No, Your Honor. They could terminate the tenancy and still not make a bona fide offer. It turns more, I believe, on the application of equitable remedies. In the ultimate event, it's determined that the offer was not bona fide. And what I mean by that is, and I think the Ombedian case points this out in the context of a right of first refusal. There was a right of first refusal held by the tenant. And it was determined that the right of first refusal was not honored and the property was not properly offered to the tenant, that the tenant stayed in possession of the premises. Well, when it was ultimately determined that the right of first refusal had been breached and the tenant should have been given the opportunity to acquire the premises earlier, the court fashioned a remedy that said, well, yes, you stayed in the premises and you paid rent, but you should have been the owner. Therefore, we're going to offset the rent that you paid against what you would have to pay to acquire the property. So in this case, our answer would be they could terminate the tenancy, but the consequence of delay of not making a bona fide offer when they should have would be that we are not obliged to pay rent that would otherwise accrue during that, when we stayed in the property. And I think there's a Federal case. Well, we have a case called Hilo that seems to support that basic notion. Yes, Your Honor. Yes, Your Honor. So to answer your question more directly, they're not precluded from terminating. It's not a condition to termination to make a bona fide offer, but they bear the risk of it not being, ultimately being determined not to be a bona fide offer. But you have a risk on the table as well, right? Because if it is determined that it was a bona fide offer, you remain there. You're going to have to pay some money. That is absolutely right. We don't dispute that at all. So your argument is that, one, she misapplied the law, and, two, if you look at the law correctly, there's a genuine factual dispute over whether or not there was a bona fide offer. Yes. Isn't that right? That's correct. And so we understand each other. Misapplied a law in the context of the first issue. Well, she didn't get the law correct. Yes. On the issue of requiring proof of ready, willing, and able. Yes. Well, I don't know about that, but I have a feeling here that there is – that my sense is that what she did here really doesn't comport with what we said in Hilo. But I'm not – I don't want to make any – you know, I'm just thinking out loud. Well, Your Honor, let me just flesh out this requirement of ready, willing, and able. And I think the circumstances are important to understand that. We don't have a contract. We have a statutory obligation to make a bona fide offer, which, if accepted, will result in a contract. So we don't have a contract, and the existence of a contract – Do you have to make the offer, or do they have to make the offer? They have to make the offer. You said we. I apologize, Your Honor. The franchise or the oil company has to make the offer. They didn't make a bona fide offer in this case, therefore we didn't accept it. Therefore, there was no contract. And the common law ready, willing, and able cases that they cite are all in the context of there is an existing contract. And to give it some more factual specificity, one big problem Judge Silver seemed to have was she didn't like the affidavit, the declaration of Mr. Irvin's banker, and said, well, she's merely predicting, trying to predict whether he would ultimately obtain a loan. And our problem with that analysis is we're told to come forward with evidence of being ready, willing, and able. We don't have a contract. You don't go to a bank without a contract in hand and expect anything other than some general comments of probability, which is all Maria Kaysen could do. It just goes to the weight. Pardon me? It goes to weight. Absolutely. It goes to the weight of it. Time for rebuttal. Thank you. Before you do, this is not on the time. Would you kindly tell me exactly what remedy you seek from this Court? We seek, Your Honor, that it be remanded to the District Court for a factual determination as to whether or not the offer was You want us to reverse the judgment? Yes, Your Honor. Reversal of the judgment, remanded to the District Court with direction to determine the factual issues of was there a bona fide offer? If there was not, what is a bona fide offer? And then it would have to determine the damages resulting to Mr. Irvin for the failure to present a bona fide offer when they were obliged to. I mean, did he try to mediate this case? Yes. I mean, mediate with an official mediator or just talk between attorneys? Well, Your Honor, we did have some discussion with the court's mediation service. They were good faith discussions, but it didn't result in a settlement. Okay. All right. Let's hear from the other side. Please, the Court. It doesn't hurt for the appellees. First, I guess, I'd like to address the very last thing that counsel said, and that is that they're now just seeking damages and apparently no longer seeking specific performance. This case has progressed entirely on their claim that my client should be forced to sell the station to them. And as to damages, Your Honor, one of the issues in this case is Judge Silver struck the damage calculations that were given on the grounds that there never was one that was provided, there was never any evidence of damages, and I don't believe there's... Now, was that in conjunction with the summary judgment, or was that in connection with what was going to go to trial? That was, I believe, in connection with the summary judgments. There was not a damage calculation that was provided. There was not evidence that could support a damage calculation. That's obviously an abuse of discretion standard. And if all they're seeking is damages, this is obviously an entirely different case. I'd like to address Your Honor's question about Rule 50. The judge talked about why judgment shouldn't be granted as a matter of law. There had been motions for summary judgment going back and forth, and those were the words that she used, judgment as a matter of law. I think she might have referred to Rule 50. But there was not any argument made below that somehow Rule 50 shouldn't apply and it should be Rule 56 or something like that. And I believe that that issue would be waived at this point for not having been raised below. But the standards are... See, how did that all come about? We were getting ready. This case has led a rather long and tortured history. It's almost seven years old now. We had received summary judgment, some partial summary judgments. The Court had made various rulings. And we were moving along. In fact, the issue really crystallized when we were at the pretrial conference getting ready to go to a jury trial. The appellants had demanded a jury. And the judge said, you know, I think that there's a real serious question here about whether Mr. Irvin can show ready, willing, and able. And if we're going to have to go through a jury trial. And the issue here, this is an unusual case. We did not say... I mean, there was a dispute. We moved for summary judgment. The Court denied it. And we weren't challenging that as to whether or not the offer that was made by my clients was bona fide under the statute. But you didn't make a motion on summary judgment saying there was no evidence of ready, willing, and able? That was not... That was part of the discovery that we did. It was obviously something that was addressed immediately because the first declaration from Ms. Kassem was attached as a response in the motion for summary judgment. We had made a tactical decision to go at it on the BFO. The judge in her ruling, sua sponte, which she's allowed to do, as I understand the law, said, I think there's a real serious issue here. And the evidence was in the record. We asked about it in deposition and interrogatories. But as we got there, it was painfully clear that even... And we accepted, for purposes of our case, we said, could you... What evidence do you have that you could buy this property for the amount that your appraiser, plaintiff, said was the number? The lowest amount it can conceivably have been. And there was a glaring lack of evidence on that. And in this circumstance, as we know, the PMPA provides very specific remedies. One of the things, and the reason why this case is so procedurally unusual, is that the franchisees have a statutory remedy. If they really want to buy the property and they really don't think that the offer's bona fide, they can go in and, under very lenient standards, as Your Honors are aware, can get an injunction against termination of the franchise. There then is an expedited procedure for determining was the offer that was made by the franchisor bona fide or was it not. This is all well and good, but it looks like, from what our... My check on the record is that she denied summary judgment on the issues that were going to go to trial. And everybody went to the pretrial conference. And then after thinking about it some more, she decided, well, there really is no need for a trial because I don't think he has any evidence. So that procedural posture of the case, rather than inviting another pure summary judgment motion, she just said, judgment is a matter of law for the defendant. Mr. Nolan, I don't think you addressed our problem, that we have clear precedent saying when you cannot apply Rule 50. So we're stuck with that. She jumped the gun. Well, I'd like to, let me, I guess, address, if I could, Judge Pez's question, because it's an important one. She didn't just say I'm granting judgment. She said, I'm going to give you another opportunity, 30 days, to go out. They had told us, supposedly, that you've heard so much about this warehouse full of documents. You're not dealing with the President. The President says you have to let it go to trial. How do you get around that? Well, as I've mentioned previously, that argument was never raised. No, it wasn't raised, but now we're reviewing it. That's the law of the circuit. The reason, had counsel said, wait a minute, you mentioned Rule 50, we're talking about granting judgment as a matter of law, whether it's Rule 50 or 56. Wait a minute, you can't do that. There are a lot of ways that this procedurally would have been corrected, and she, we could say, we'll move again for summary judgment. The Court can grant. Do you have any authority for the idea that the circuit's precedents on Rule 50A can be waived by a litigant? I do not, because I have to say, until we walked in this morning, that issue has never come up. And I would be happy to provide supplemental briefing if that's a serious issue, but I don't believe this rises. Pretty serious issue. Well, I understand. But, I mean, from a standpoint, the precedent that also says if a litigant doesn't raise an issue below or procedural infirmity, it's waived unless it's manifested. As I understand, this just didn't happen on the first day of trial. No, there was a long period of time. No, no, no. No, listen to me. She, this didn't, the judge didn't come out on the day of trial and say, judgment is a matter of law. What she did was she entered an order after that pretrial conference and before the party showed up for trial saying, judgment is a matter of law. She didn't give anybody a chance to show up for trial. So what he's, you're saying he has to, in that circumstances, what you're saying is that he has to file a motion for reconsideration or a motion for a new trial. And I don't think that's correct. Well, what I think, because this was argued, she said, take 30 days, come back with whatever evidence that you have. We had a hearing after that, and there were arguments made about ready, willing, and able doesn't apply and the substantive arguments. But no one ever suggested, oh, gee, and by the way, this whole procedure is flawed. It really should be under Rule 56 or in some other fashion. And I believe and I understand the rules are very serious, but I also understand the rule that says if a litigant's going to raise something, it should be done at a time when the other counsel and the judge have an opportunity to correct it, because the standards are exactly the same. Because she looked at it and said, whether it's 56 or 50, what we had was completely speculative declarations, two of them. One of them which would have clearly required an expert report that was never provided by a lady that worked at a bank. Those were stricken, and under the standards that were applied in the case law we've cited, I believe that was well within the court's discretion and appellants would have the burden of showing lack of harm and all those types of things. And then there was Mr. Irvin's declaration. He was questioned in his deposition about his finances and whether his station was ever profitable, whether it ever made money, did he even want to buy the station. And he said, I don't have any idea. We asked specific discovery. Give us any documents that go to your ability to purchase the property for what you claim is the lowest amount. And we never got anything. I think there was one question in the deposition asking him, even if we offered it to you for $300,000, would you buy it for that? And he said, I don't know. He said, I don't know. Do you want to buy it as you sit here today? And he said, no. And he disclaimed any knowledge of the finances of the business. And then suddenly he comes back later on and gained his personal knowledge that he didn't have before. Additionally, one of the things that's very important here is that the first declaration that Mr. Irvin provided said, I tried to get a bond. And as of July 2004, I could have bought the station in October of 2003. But by July of 2004, my condition, my financial condition had deteriorated. I couldn't get a bond. I didn't have the property that I told you about. The case law that we've cited, and there's a dispute, I suppose, about when you have to, when the ready, willing, and able kicks in. But they have to show the ability to buy it at all times, including throughout the litigation. And I think what we've seen today is counsel coming in and saying, you know what, this case isn't even about specific performance. We now just want damages. So if that's the case, it would be asking for a remand to go back and the court would say, I've already struck your damage calculation. You've had years. This case has gone on for years. So there's not any reason for a trial then anyway. Is there a monetary judgment against the plaintiff now? There is a monetary judgment. How much? It is about $200,000, I believe, plus attorney's fees. There was about $40,000 of fuel that was ordered and not paid for before the termination took effect and the heldover position began. There was rent that was not paid for the entire period, about 11 months before he did. How much was that? The rent was about $110,000. It was under the contract. If a jury were to determine that the offer was not bona fide, what does that do to his position? Well, it wouldn't do anything, frankly, because... He would still have to pay all the rent? No. If he could meet all the requirements and get specific performance, I don't disagree that the case law says that he doesn't have to pay rent, but he would have to pay interest on the money. That's not the area of the dispute. But he would have to show, I can buy the property, and he couldn't. And now they're saying... He could have bought the property had there been a bona fide offer. Well... Because you're going past that. I mean, that's... Right, and what he's saying here is... I thought what he was saying is, had there been a true bona fide offer, I could have bought the property back then, and he didn't give me one, so I don't have to pay you all these damages. He's saying... I may have to pay you for the gas that I used, but I don't have to pay you all these damages. He says that in the declarations it's completely conclusory and contradictory to what he said. And what he's saying, Your Honor, is... The reason that I can't buy the property is because you stopped selling me fuel, and I wasn't able to buy gas, and the whole condition of the business deteriorated. And again, they were the plaintiff here. The way to deal with that is to go in and get an injunction against the termination. The standards are extremely low. But now to come in and say, well, I really couldn't buy it because my business deteriorated, but I chose not to get the injunction, really what that leads you to, and where we ended up now, is they're making a claim for damages as a result of the termination, which they've had numerous opportunities. They made alternative theories below. They made arguments about specific performance. They also made arguments for damages, but they didn't do anything to develop a damage case, and that evidence was stricken, and I believe quite properly so. So it's alternatives here. And at the end of the day, our right to recover attorney's fees and leases, the payments for leasing, et cetera, attorney's fees under the contract, we've cited a case law, I believe that's in the Thalen Oil case, is appropriate. Let me ask you, sir, if you were to get all the relief that you wished, what would be the determination you want this Court to enter? We are asking this Court to enter affirming the judgment on the claims against my clients and affirming the judgment on the counterclaims. Like I said, the money judgments have been entered, and that's what we're asking the Court to do. Now, if we find that Judge Silver made a mistake by granting judgment under Rule 50 and remanded her for further proceedings, what would be your position before Judge Silver? My position would be that I believe it's no longer that specific performance is even in the case anymore. We would make another motion for summary judgment. We would make another motion for summary judgment. They don't have any evidence of damages, but despite many attempts on our part to get it to come forward with that, and it also, I guess in some fashion, the issue about the tank removal is still out there, because after these tanks sat there for virtually a year without any gasoline in them, that triggers some requirements under Arizona environmental laws. And what they're asking for, without any support and based on a declaration that's been stricken, they want brand new tanks and pumps to be installed at a price greater than what they claim to be, the total value of the prior station. If they get specific performance? I suppose so. But the issue, I mean, unless it's been formally withdrawn, the specific performance, we'd be dealing right back square again at some point with the ready, willing, and able issue, because again, despite this, Judge Silver gave the appellants numerous opportunities to come in and to cure the problems with their case, and it never happened. And we would suggest that all of the evidence, she was well within her discretion and properly ruled that there wasn't any issue of the fact for trial and would ask the judgment be affirmed. Okay. Thank you. We've got just a very short period of time here for rebuttal. Your Honor, very quickly. It's not our obligation to seek an injunction to preserve our claim for damages. We assume certain risks if we don't. We assume the risks that we won't be able to stay in the premises and earn money against the possibility that we might ultimately be determined to owe rent. But it doesn't preclude our ability to recover damages. Your Honor, this case started out as a specific performance case, and that still is a remedy that may be theoretically available. The problem that we face now is that they removed the tanks after the lawsuit was filed, after some of these orders were entered. The PMPA and the case is construing it, and their offer itself requires that in the absence of an environmental requirement, they give it to us with the tanks and dispensing equipment. Their offer included the tanks and equipment. There was no environmental requirement, and there's never been an environmental requirement proved that required them to remove those tanks. They removed those tanks, it is true, because time passed. But time passed only because they did not timely perform. Now they seek to force that consequence on us. Thank you. I want to ask you, did you waive the Rule 50 objection? No, Your Honor, I don't believe we did. We certainly... What did you do after that ruling was waived? Well, I just looked at the initial order, and it said there will be argument on whether it should be entered. And at the time of the argument, we argued that she did jump the gun, that these things went to wait. Since it's ruling against you, did you have no opportunity to move for reconsideration? Well, certainly we could have, Your Honor. But I don't think we waived it by failing to move for its reconsideration. But certainly we could have. You said there was an order of Judge Silver saying that she was about to make a Rule 50 motion? She issued a proposed decision and said, we're going to discuss this. But the proposed decision, according to my recollection in recent reading, didn't reference Rule 50. What she did say in the cover to it was, we're going to argue whether or not judgment should be entered as a matter of law at the pretrial conference. We then argued, and arguments were made, that the substance of which was, you're making determinations of admissibility when there are really issues of weight, there is credible evidence, you've got to let us go to trial. In answer to Judge Noonan's question, where would we look to see in this record whether you at any time in the trial court raised the point that Rule 50A could not be invoked until all evidence had been submitted at a trial before the jury? You would have to look at the transcript of the argument at the time of the pretrial conference. Is that in the record? Did you provide that to us? I don't recall if it's in the record, but I certainly can if it's not. Well, today's the day of decision. It's either in the record, and we can look at it, or it isn't. And if the point of the appellee is that you waived this point by not bringing it up, I'm asking you again, where can I find any objection on your ground, on your part, to the application of Rule 50 at the pretrial conference to terminate this litigation? Your Honor, absent that transcript, which I recall that my colleague here submitted hearing transcripts, I just confess I don't recall if he submitted that one. There is no pleading that I can recall where that specific argument was made. You didn't file a motion for reconsideration? We did not file a motion for reconsideration. You didn't file a motion for a new trial? We did not file a motion for a new trial. And it's not mentioned in your briefs? That specific item is not, Your Honor. That specific item meaning? Being a specific reference to the requirements of Rule 58. Okay. Thank you. Thank you. Thank you, counsel. Matter submitted.
judges: Noonan, Paez, Bea